# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| CANDY L. CONLEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW M. SAUL, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | No. 2: 20 CV 44 DDN |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Candy L. Conley for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## BACKGROUND

Plaintiff Candy L. Conley was born on October 6, 1979. She filed her application on September 6, 2018, ultimately alleging a November 27, 2017 onset date due to morbid obesity, post-traumatic stress disorder (PTSD), major depressive disorder, and anxiety disorder. On November 25, 2019, following a hearing, the ALJ concluded that plaintiff was not disabled under the Act. The Appeals Council denied review. Accordingly, the ALJ's decision became the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).

## MEDICAL AND OTHER HISTORY

The following is plaintiff's medical and other history relevant to her appeal. In February 2017, plaintiff took an overdose of Effexor, an anti-depressant, in an apparent suicide attempt. However, she was not hospitalized psychiatrically and continued to work until November 2017. In November 2017, she was seen in the emergency room for rib pain. Imaging was normal. (Tr. 16, 296-300.)

In August 2018, she underwent a psychiatric evaluation and scored in the severely depressed range. Plaintiff began taking psychotropic medication at that time and appeared to improve significantly. (Tr. 364.)

In September 2018, plaintiff reported she lived with family, spent most of her time in bed, wore the same clothes five days in a row, sometimes prepared meals, did laundry, but did not drive. (Tr. 201-04.) A third-party function report from the plaintiff's husband reported similar levels of functioning. (Tr. 226-33.)

On October 11, 2018, consultative examiner William Busby, M.D., examined plaintiff and concluded she had no severe physical limitation. (Tr. 19, 68-69.)

In October 2018, after she had begun taking psychotropic medication, Joseph Spalding, D.O., a psychiatric specialist, reported that plaintiff had a 10-point improvement in her depression screening score. (Tr. 18-19, 392, 411.) At that time she denied having suicidal ideations and was cooperative, with normal cognition, logical thinking, insight, and judgment. (Tr. 18, 393.) Also, in October 2018, state agency psychologist Stephen S. Scher, Ph.D., found that plaintiff was no more than moderately limited in any area of work-related mental functions. Dr. Scher supported his conclusion by completing a detailed review of the plaintiff's medical history. (Tr. 18, 70-75.)

In November 2018, plaintiff's depression screening score was zero and she was sleeping an average of seven hours per night. At that time she also complained of knee pain. Imaging revealed moderate osteoarthritis in her knees and minimal degenerative change in her hips. Her gait was normal. (Tr. 18-19, 464-65, 471-78.) During a November

2018 examination, plaintiff complained of knee pain. She demonstrated full muscle strength in her lower extremities and found relief with knee injections. (Tr. 18, 458-63.)

On December 6, 2018, plaintiff saw Dr. Spalding for medication management after she was placed on additional medication. He diagnosed severe panic disorder, PTSD, and recurrent major depressive disorder. (Tr. 18-19, 395, 448.)

In January 2019, after additional knee injections, plaintiff demonstrated full muscle strength in her lower extremities. (Tr. 18, 458-463.)

Between January and May 2019, plaintiff continued to have normal mental status examinations with Dr. Spalding. (Tr. 18-19, 428, 433, 438, 443.) In September 2019, Dr. Spalding completed a Medical Source Statement and concluded she had marked or extreme limitations in all areas of work-related mental function. (Tr. 19, 467-69.)

**ALJ Hearing**

On September 16, 2019, plaintiff appeared and testified to the following at a hearing before an ALJ. She is unable to work because of her morbid obesity (5'2", 301 lbs.), PTSD, major depressive disorder, and anxiety. She can only occasionally clean the house and does not cook. She does her laundry only if she is out of clothes and spends most of her time either laying down or sitting in a chair with her feet propped up. Her past work experience includes sandwich maker, certified nurse's assistant (CNA), billing assistant, and cashier. She relies on her brother to maintain her house and help with her ten-year-old son. (Tr. 34-49, 56.)

Vocational Expert (VE) Karen C. Terrill also testified at the hearing. (Tr. 58-63.) The VE testified that the plaintiff's past relevant work was medium to heavy duty and semi-skilled. (Tr. 59.) The ALJ asked the VE to assume a hypothetical individual with the same age, education, and vocational background as plaintiff. The individual was functionally limited to light exertional work except she should never be required to climb a ladder, rope, or scaffold. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She must avoid ropes, ladders, scaffolding, and hazardous heights. She should

also avoid constant exposure to temperature extremes, humidity, and pulmonary irritants. She must avoid hazards such as unprotected heights. She is limited to simple, routine, repetitive tasks in a low-stress job defined as occasional, simple work-related decisions and few if any workplace changes and no paced production quotes. She should not have public interaction, only occasional contact with coworkers but with no tandem tasks. The VE testified that such an individual could not perform her past relevant work but could perform other work that exists in the national and local economy, including shipping and receiving weigher, routing clerk, and photocopy machine operator. (Tr. 60-61.)

## **GENERAL LEGAL PRINCIPLES**

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue,* 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability insurance benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42

(1987) (describing five-step process); *Pate-Fires*, 564 F.3d at 942 (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the functional capacity (RFC) to perform past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The plaintiff bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the plaintiff cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## **DECISION OF ALJ**

On November 25, 2019, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 8-25.) At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since her November 27, 2017 alleged onset date. At Step Two, the ALJ found that plaintiff had the following severe impairments: morbid obesity, PTSD, major depressive disorder, and an anxiety disorder. (Tr. 13.) At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the Commissioner's list of presumptively disabling impairments, 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ found that plaintiff had the RFC to perform "light" work as defined in 20 C.F.R. § 404.1567(b) except she should never be required to climb a ladder, rope, or scaffold. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She must avoid concentrated exposure to temperature extremes, humidity, and pulmonary irritants. She must avoid hazards such as unprotected heights. She is limited to

simple, routine, repetitive tasks in a low-stress job defined as: occasional, simple work-related decisions and few if any workplace changes and no paced production quotas. Her job responsibilities should not require public interaction, only occasional contact with coworkers but with no tandem tasks. (Tr. 15.)

At Step Four, the ALJ found plaintiff was not able to perform her past relevant work. At Step Five, the ALJ found there were other jobs in significant numbers in the national and local economy that plaintiff could perform such as shipping and receiving weigher, routing clerk, and photocopy machine operator. Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act. (Tr. 19-20.)

## **DISCUSSION**

Plaintiff argues the ALJ erred (a) in failing to properly evaluate her treating physician's opinion under the updated regulations; and (b) in determining her residual functional capacity.

### A. Evaluation of Medical Evidence under § 404.1520

Plaintiff argues that the ALJ did not properly evaluate the medical opinion of treating psychiatric physician Dr. Joseph Spalding under updated regulation 20 C.F.R. § 404.1520. The Court disagrees.

Plaintiff applied for benefits after March 27, 2017, and therefore the ALJ applied the new set of regulations for evaluating medical evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The revised regulations redefine how evidence is categorized, including "medical opinion" and "other medical evidence," and how an ALJ will consider these categories of evidence in making the RFC determination. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

The new rules provide that adjudicators will evaluate all medical opinions and findings using the factors delineated in the new regulations. Supportability and consistency are the most important factors and their application must be explained. Other factors which "will be considered" and about which adjudicators "may but are not required to explain"

are the medical source's "treatment relationship" with the claimant, including the length, frequency, purpose and extent of the treating relationship and whether the source has an examining (as opposed to non-examining) relationship with the claimant; specialization; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the SSA disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(b), (c) (2017).

Under the new regulations, a "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. § 404.1513(a)(2). A medical opinion does not include judgments about the nature and severity of an individual's impairments, medical history, clinical findings, diagnosis, response to prescribed treatment, or prognosis. 20 C.F.R. § 404.1513(a)(3).

Here, the ALJ found Dr. Spalding's opinion from his MSS not persuasive because it was not supported by Dr. Spalding's own treatment records or consistent with other record evidence. The ALJ noted that although Dr. Spalding opined in his MSS that plaintiff had marked impairment in all the areas considered, his own treatment notes did not support extreme or even marked limitations. The ALJ also noted Dr. Spalding's notes stated that plaintiff showed significant improvement when taking psychotropic medication and that Dr. Spalding's limitations appeared to be supported only by plaintiff's subjective complaints. (Tr. 19.) Therefore, the ALJ properly found that Dr. Spalding's medical opinion should not be given controlling weight as permitted under § 404.1520(c)(2). Accordingly, the Court finds that the ALJ did not err when evaluating the medical information under § 404.1520 because the ALJ strictly followed the requirements of the statute and gave ample explanation in his decision. 20 C.F.R. § 404.1520.

**B. Residual Functional Capacity Determination**

Plaintiff next argues the ALJ's RFC determination is unsupported by substantial evidence. She relies on Dr. Spalding's opinion and her own testimony in support of her

argument. She claims that the ALJ "played doctor" by interpreting the medical records differently than Dr. Spalding. The Court disagrees.

Residual functional capacity is a function by function assessment of an individual's ability to do work related activities based on all the evidence. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001). Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The claimant has the burden to establish her RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). The RFC need only include the limitations supported by the record. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006)

Here, the ALJ found that plaintiff had the RFC to perform "light" work as defined in 20 CFR 404.1567(b), except she should never be required to climb a ladder, rope or scaffold. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She must avoid concentrated exposure to temperature extremes, humidity and pulmonary irritants. She must avoid hazards such as unprotected heights. She is limited to simple, routine, repetitive tasks in a low-stress job defined as: occasional, simple work-related decisions and few if any workplace changes and no paced production quotas. Her job responsibilities should not require public interaction, only occasional contact with coworkers but with no tandem tasks. (Tr. 15.)

Plaintiff claims that the ALJ relied heavily on his own opinion. The Court finds otherwise and concludes there was substantial evidence in the record to support the ALJ's decision, specifically, the reports of Drs. Scher, Busby, and Spalding, VE testimony, and additional records.

In developing the RFC finding, the ALJ properly considered plaintiff's subjective symptoms, including her testimony and/or reports of: having flashbacks, nightmares, and

dysphoria related to past abuse; feeling suicidal on a daily basis; having diminished energy, a lack of motivation, panic attacks, crying spells, and difficulty concentrating. (Tr. 16-17, 48, 52-57, 66, 201-07, 360-70, 408, 411.) *See* 20 C.F.R. § 404.1529. The ALJ also properly considered plaintiff's testimony concerning pain in her knees and lower back. (Tr. 16, 57.) The ALJ also considered plaintiff's September 2018 function report in which she reported she lived with family, spent most days in bed, wore the same clothes five days in a row, "sometimes" prepared easy meals and did laundry, and did not drive. (Tr. 17, 201-04.)

However, the ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other record evidence. (Tr. 16.) In evaluating consistency, the ALJ properly considered plaintiff's objective medical evidence and other evidence in accordance with the regulation. *See id.* at § 404.1529(c)(2) and (3). *See also Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (ALJ may discount subjective complaints that are undermined by the medical evidence).

As to physical pain, the ALJ found that the objective evidence did not support the severity of plaintiff's complaints. (Tr. 16.) The ALJ considered plaintiff's November 2017 emergency room visit for rib pain, negative imaging, and same-day discharge. (Tr. 16, 296, 300.) In November 2018, imaging revealed moderate osteoarthritis in her knees and minimal degenerative change in her hips. (Tr. 18, 464-65, 476-78.) Though plaintiff complained of knee pain, she demonstrated full muscle strength in her lower extremities during examinations in November 2018 and January 2019 and obtained good relief from knee injections. (Tr. 18, 458-63.) The ALJ found nothing in the medical evidence that would indicate any physical impairment that would prevent her from performing a restricted range of light duty work. (Tr. 16, 18.)

As to mental impairments, the ALJ considered plaintiff's February 2017 overdose/suicide attempt, but noted that it did not result in psychiatric hospitalization. The ALJ also noted that plaintiff did not allege becoming disabled until November 2017, acknowledging she was not disabled at the time of her overdose/suicide attempt. (Tr. 17,

314-15, 317, 333, 335-37, 361.) The ALJ also considered the diagnostic evaluation plaintiff underwent in August 2018 where she scored in the severely depressed range on a depression screening tool. (Tr. 17, 360-70.) The ALJ noted that while her mood and thought content were depressive and her affect was constricted, her mental examination was otherwise unremarkable, and she was described as cooperative with a logical thought process and normal insight and judgment. (Tr. 17, 364.) The ALJ noted plaintiff was diagnosed with major depressive disorder, PTSD, and agoraphobia with panic disorder, and although she was prescribed psychotropic medication, she had not been taking such medication at the time of the evaluation. (Tr. 17, 361, 367). The ALJ concluded the evaluation was not indicative of disorders that would prevent plaintiff from engaging in all work activity. (Tr. 17.)

The ALJ also considered treatment notes from October 2018 showing a 10-point improvement in plaintiff's depression screening score after medication intervention and that she denied any side effects from her medications. Also, at the October 2018 visit, plaintiff denied suicidal ideation and was cooperative with normal cognition, logical thought process, and normal insight and judgment. (Tr. 18, 392-93.) The ALJ found that the record evidence supported a finding that plaintiff's mental health symptoms were controlled with medication. (Tr. 18.) *See Hensley v. Colvin*, 829 F.3d 926, 933-34 (8th Cir. 2016) (If an impairment can be controlled by treatment or medication, it cannot be considered disabling).

Considering the medical evidence, including plaintiff's improvement with treatment, the ALJ found that plaintiff did appear to have a low stress tolerance, but that a limitation to simple, routine, repetitive tasks in a low-stress working environment involving limited interaction with others was sufficient to account for any psychological symptoms she may experience in the workplace. (Tr. 15, 18.)

As detailed above, the ALJ properly considered the medical opinion of Dr. Spalding and the prior administrative finding of Dr. Scher in accordance with the regulation. (Tr. 18-19). *See* 20 C.F.R. § 404.1520c. The ALJ also appropriately considered the administrative medical finding of state medical examiner Dr. Busby, addressing plaintiff's

physical abilities but found Dr. Busby's finding that plaintiff did not have any exertional limitations to be unpersuasive in light of plaintiff's morbid obesity, which contributed to low back and knee pain. (Tr. 19, 68-69.) Considering all of the record evidence, the ALJ appropriately accounted for plaintiff's physical limitations by limiting her to light-duty work with additional physical limitations. (Tr. 15, 19.)

Finally, to the extent plaintiff argues that the ALJ misinterpreted one single aspect of her function report, i.e., that she was able to get a ride and shop for her own needs, any misinterpretation is harmless error as there is substantial additional evidence of record to support the ALJ's residual functional capacity finding. *See Byes v. Astrue*, 697 F.3d 913, 917 (8th Cir. 2012) (to show an error was not harmless, plaintiff must provide some indication that that the ALJ would have decided the case differently).

The ALJ's decision is supported by the testimony of the VE, record evidence of Drs. Scher, Busby, and Spalding, and others. In summary, the court concludes that the ALJ properly included all limitations supported by the record into plaintiff's RFC and the hypothetical questioning. The vocational expert indicated that an individual with plaintiff's limitations could perform work existing in significant numbers in the national economy. As such, the ALJ properly concluded that plaintiff was capable of other work and, thus, not disabled.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 7, 2021.